**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**CHERYL D. McGEE, TINA McGEE, LUCILLE**  **PLAINTIFFS**
**McGEE and PRESTON McGEE Sr.**

v.                                             CIVIL ACTION NO: __3:20-cv-525-DCB-JCG__

**JUPITER ENTERTAINMENT HOLDINGS;**
**HEADLINE NEWS NETWORK (HLN); ROBERT**
**SCHULER SMITH; JERMAINE PULUM; and**
**JOHN AND JANE DOES 1-10.**                            **DEFENDANTS**

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Jupiter Entertainment Holdings, LLC ("Jupiter") files this Notice of Removal of this action in its entirety from the Circuit Court of the First Judicial District of Hinds County, Mississippi to the United States District Court for the Southern District of Mississippi, Northern Division.  As set forth below, this case is subject to removal because it is a civil action between citizens of different states and involves an amount in controversy that exceeds the sum of $75,000.  Each of the Defendants properly joined and served in this action have consented to the removal of the action.

Each of these Defendants respectfully reserve the right to assert all defenses available to them under Fed. R. Civ. P. 12(b), including but not limited to a defense based on this Court's lack of personal jurisdiction, as provided under Fed. R. Civ. P. 81(c)(2)(C).

**I.    BACKGROUND**

    **A.    Summary of Allegations**

1. Defendant Jupiter is a television production company, which produces the true crime documentary series *Vengeance*.  This action arises out of an episode from that series entitled "Killer Lovers: Deadly Double Life", which first aired on the Headline News Network ("HLN") on or about March 31, 2019 (the "Episode").  *See* First Amended Complaint ¶¶ 22–25.

1

The Episode focuses on the killing of Barry Odom, which occurred in Jackson, Mississippi in 2010, and the criminal investigation and ultimate conviction of Bryn Ellis for that murder. *See id.* ¶ 9–13. Ellis's apparent motive for the crime was jealousy relating to Odom's relationship with a local woman named Cheryl McGee, who was the mother of Ellis's child. *See id.* ¶ 10. Cheryl McGee was one of the primary witnesses for the prosecution at Ellis's trial. *See Bryn Ellis v. Mississippi*, 2013-KA-02000 (Miss. Ct. App. 2015).

2. In this action, Plaintiffs allege that Jupiter included a photograph of Plaintiff Cheryl McGee in the Episode even though she is not the same Cheryl McGee who served as a witness in Ellis's murder trial. *See* First Amended Complaint ¶¶ 27(g), 39-40. Plaintiffs further allege that the mistaken use of Plaintiff Cheryl McGee's image in the Episode, to identify the witness Cheryl McGee, was negligent, constituted defamation and invasion of privacy, and has caused Plaintiff Cheryl McGee (and several of her family members) various forms of physical harm and mental anguish. *See id.* ¶¶ 43–50.

3. The First Amended Complaint also lists as a defendant HLN. HLN is not an entity capable of being sued in its own name. It is a network owned and operated by Cable News Network, Inc. ("CNN, Inc."). In any event, neither HLN nor CNN, Inc. has been properly served with the Amended Complaint.

4. In addition to Defendant Jupiter, Plaintiffs have sued Robert Schuler Smith ("Smith"), the district attorney who represented the State of Mississippi in Ellis's murder trial, and Jermaine Pulum ("Pulum"), the Jackson Police Department Detective who was involved in Odom's murder investigation, both of whom were interviewed for the Episode. *See id.* ¶¶ 5(c)-(d).

5.     As set forth below, Defendants Smith and Pulum were fraudulently joined in this action for the sole and improper purpose of defeating diversity jurisdiction. Plaintiffs' claims for invasion of privacy, negligence, breach of contract, negligent infliction of emotional distress, defamation, and misuse of public office/employment against Defendants Smith and Pulum are facially defective and cannot preclude the removal of this action.

**B.     Procedural Background**

   **(i)     First Action Filed by Plaintiffs in Mississippi State Court, Removed by Jupiter to this Court, and Voluntarily Dismissed Without Prejudice.**

6.     On September 27, 2019, Plaintiffs filed their first action against Jupiter and certain other defendants in the First Judicial District of Hinds County, Mississippi (the "First Action"), and amended the complaint twice before serving any defendant

7.     Defendant Smith was named as a defendant in the First Action. *See* Civil Action No. 3:20-cv-00097, ECF No. 1-2, second amended complaint in First Action. Defendant Pulum was not named as a defendant in the First Action. *Id.* HLN was named as a Defendant in the First Action, along with CNN, Inc. *Id.*

8.     On February 21, 2020, Defendant Jupiter removed the First Action to this Court, asserting diversity jurisdiction. Jupiter also asserted that Smith had been fraudulently joined as a defendant in the First Action for the improper purpose of defeating diversity jurisdiction. *See id.*, ECF No. 1, Notice of Removal in First Action. The notice of removal explained that HLN was not a separate entity capable of being sued in its own name. *Id.*

9.     On March 19, 2020, this Court dismissed the First Action without prejudice, based upon a notice of voluntary dismissal filed by Plaintiffs. *See id.*, ECF Nos. 5-7, Notice of Dismissal, Order Granting Voluntary Dismissal, and Final Judgment.

### (ii) Second Action Filed by Plaintiffs in Mississippi State Court.

10. On March 31, 2020, Plaintiffs filed a second action in Hinds County Circuit Court (the "Second Action"). *See* Exhibit A, State Court Docket in Second Action at Dkt. No. 2. This Second Action is the subject of this Notice of Removal. In the Second Action, Plaintiffs again named Jupiter and HLN as defendants and again fraudulently joined Smith as a defendant. Plaintiffs also : (i) fraudulently joined Defendant Pulum and (ii) added certain additional claims against Smith and Pulum which, like the claims asserted against Smith in the First Action, are facially defective and cannot preclude the removal of this Second Action. On June 24, 2020, Plaintiffs filed an Amended Complaint adding another claim against Defendants Smith and Pulum, which is also facially defective (the "First Amended Complaint" or "FAC"). *Id.*, Dkt. No. 3.

11. On July 13, 2020 Plaintiffs served the FAC on Jupiter. *Id.*, Dkt. No. 10. In filed proofs of service, Plaintiffs assert that they served the FAC on Defendants Smith and Pulum on July 13, 2020. *Id.*, Dkt. Nos. 8-9. On July 27, 2020, Plaintiffs filed a proof of service indicating that HLN had been served on July 23, 2020, but the proof of service reflects no manner of service, but rather states that there was a "Service Attempt." *Id.*, Dkt. No. 11.

## II. DIVERSITY JURISDICTION

12. This Court has diversity jurisdiction over this civil action under 28 U.S.C. § 1332, and this action is removable under 28 U.S.C. § 1441(b). Diversity jurisdiction exists in a civil matter when the amount in controversy exceeds $75,000, exclusive of interest and costs, and the dispute is between citizens of different states. *Id.* § 1332(a)(1). As discussed below, both of the requirements for diversity jurisdiction have been met in this case.

4

### A.     The Amount of Plaintiffs' Claims Exceeds $75,000

13.     While the FAC does not include an explicit calculation of Plaintiffs' damages, Plaintiffs' allegations nevertheless provide a good faith basis on which to conclude that the amount in controversy in this action exceeds the jurisdictional minimum under 28 U.S.C. § 1332(a)(1).

14.     The FAC alleges that each Plaintiff in this action "suffered *significant life-altering changes*" including "mental pain and suffering," "anxiety and depression," and incurred "health care and counseling cost." FAC ¶¶ 96-98 (emphasis added). Plaintiff Preston McGee alleges that he is "subject to revocation or losing his security clearance which, in turn, will impact [his] business and income." *Id.* ¶ 99.

15.     Based on the foregoing allegations, Jupiter reasonably believes that Plaintiffs intend to seek recovery in this action of actual damages in excess of $75,000.

16.     The FAC also seeks an unspecified amount of punitive damages for each Plaintiff. FAC ¶ 101.

17.     The punitive damages requests of each Plaintiff must be aggregated in determining whether the amount in controversy exceeds the jurisdictional minimum. *Thomas v. NBC Universal, Inc.*, 694 F. Supp. 2d 564, 567 (S.D. Miss. 2010) ("[I]n suits involving multiple plaintiffs seeking punitive damages under Mississippi law, the court is required to aggregate the plaintiffs' claims for punitive damages in determining the amount in controversy.").

18.     By requesting punitive damages, Plaintiffs have put in controversy an amount that exceeds the jurisdictional minimum. *See Beene v. Dihn*, No. CIV. 108-cv-1331-HSO-JMR, 2009 WL 605113, at *2 (S.D. Miss. Mar. 6, 2009) (noting that "federal courts sitting in Mississippi have routinely held that unspecified claims for punitive damage sufficiently serve to bring the amount in controversy over the requisite jurisdiction threshold set out in 28 U.S.C. § 1332.")

(citing *Conner v. First Family Fin. Servs., Inc.*, No. 4:0l-cv-242, 2002 WL 31056778, at *8 (N.D. Miss. August 28, 2002)).

      **B.**     <u>**Complete Diversity of Citizenship Exists Among the Parties**</u>

19.     Removal pursuant to 28 U.S.C. § 1441 is authorized if there is complete diversity between plaintiffs and "parties in interest *properly joined and served* as defendants . . . ." *Id.* § 1441(b)(1)(emphasis added). For the purposes of determining diversity for removal, "the citizenship of defendants sued under fictitious names shall be disregarded." *Id.* § 1441(b)(2).

20.     At the time the FAC was filed and at the time of removal, Plaintiffs Cheryl McGee, Tina McGee and Lucille McGee were and are residents of the State of Mississippi, and Preston McGee, Sr. was and is a citizen of Washington D.C.

21.     For the purposes of determining jurisdiction, a corporation is deemed to be a citizen of the state in which it is incorporated and the state in which it has its principal place of business. *See* 28 U.S.C. § 1332(c). At the time of filing of the FAC and at the time of removal, none of the Defendants properly joined in this action is a citizen of the State of Mississippi or the District of Columbia. The citizenship of each properly joined Defendant is as follows:

     i.     Defendant Jupiter Entertainment Holding, LLC is incorporated in Delaware and has its principal place of business in Tennessee. The members of the LLC are Sky Ventures Limited, a corporation organized under the laws of England and Wales with its principal place of business in the United Kingdom, and JEH Tennessee, LLC. JEH Tennessee, LLC's only member is Stephen Land, who is a citizen of Tennessee.

    ii.     Defendant HLN. is not an entity capable of being sued, but rather a network owned and operated by CNN, Inc.. CNN, Inc. is incorporated in Delaware and has its principal place of business in Georgia.

22.     At the time the FAC was filed and at the time of removal, Defendants Smith and Pulum are alleged to have been citizens of Mississippi. FAC ¶¶ 5(c)-(d). However, the citizenship of Defendants Smith and Pulum should be ignored for the purposes of removal

6

because, as discussed below, Plaintiffs fraudulently joined them for the sole purpose of defeating diversity jurisdiction.

## III.  PLAINTIFFS' JOINDER OF DEFENDANTS SMITH AND PULUM IS FRAUDULENT

23.  A defendant must be considered fraudulently joined, and removal permitted, when the plaintiff has not or cannot state a claim for relief against that non-diverse defendant under applicable substantive law. *See Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 (5th Cir. 2013) (quoting *McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 333 (5th Cir. 2004)) ("Improper joinder can be established [by demonstrating the] inability of the plaintiff to establish a cause of action against the non-diverse party in state court."). The test for determining fraudulent joinder is analogous to the standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Id*. Where "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant," that defendant must be ignored for the purposes of determining diversity of citizenship. *Id.*

24.  To state a claim that can survive a motion under Fed. R. Civ. P. 12(b)(6), Plaintiffs must plead allegations that "raise a right to relief above a speculative level" and set forth "sufficient factual matter, [which if] accepted as true, [] state a claim that is plausible on its face." *See Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).  A claim is plausible when the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "Labels and conclusions or a formulaic recitation of elements of a cause of action" are not sufficient to support a claim. *Id.*

25. The citizenship of Smith and Pulum must be ignored for the purposes of determining complete diversity because, as shown below, Plaintiffs have not — and cannot — state a claim for relief against them.

### A. Plaintiffs Fail to Adequately Plead Defamation Against Fraudulently Joined Defendants Smith or Pulum

26. To state a claim for defamation, Plaintiffs must allege "[i] a false and defamatory statement concerning plaintiff; [ii] unprivileged publication to third party; [iii] fault amounting at least to negligence on [the] part of [the] publisher; [iv] and either actionability of statement irrespective of special harm or existence of special harm caused by publication." *Franklin v. Thompson*, 722 So. 2d 688, 692 (Miss. 1998). A communication is defamatory if it "tends to injure one's reputation, and thereby expose him to public hatred, contempt[,] or ridicule, degrade him in society, lessen him in public esteem[,] or lower him in the confidence of the community." *Short v. Versiga*, 283 So. 3d 182, 187 (Miss. 2019) (relying on *Fulton v. Miss. Publishers Corp.*, 498 So. 2d 1215, 1217 (Miss. 1986)).

27. Defamation must be plead with particularity. *See Jones v. City of Hattiesburg*, 228 So. 3d 816, 820 (Ct. App. Miss. 2017) (holding that a complaint failed to state a claim for defamation where it "did not state with any specificity when, where, or how the [defamation] took place"). To support a claim for defamation, the allegedly defamatory meaning "must be *clear and unmistakable from the words themselves* and not be the product of innuendo, speculation, or conjecture." *Franklin*, 722 So. 2d at 692 (emphasis added); *see also Perkins v. Littleton*, 270 So. 3d 208, 213 (Ct. App. Miss. 2018). Plaintiffs must plead the "words or synonymous words which constitute the slander," *Holland v. Kennedy*, 548 So. 2d 982, 986 (Miss. 1989). These requirements are "stringently applied by Mississippi courts," *Mize v. Harvey Shapiro Enters.*, 714 F. Supp. 220, 224 (N.D. Miss. 1989), such that failure "to set forth

8

any specific allegations regarding the alleged defamatory communications in [the] complaint" is grounds for dismissal. *See Rosebuck v. Dothan Sec., Inc.*, 515 Fed. Appx. 275 (5th Cir. 2013) (affirming dismissal based on plaintiff's reliance on mere "conclusory allegations").

28. Plaintiffs' allegations against Defendants Smith and Pulum fall far short of these strict pleading requirements. The FAC fails to allege that Defendants Smith or Pulum made a false and defamatory statement concerning Plaintiff Cheryl McGee or any of the other named Plaintiffs. Plaintiffs do not identify a single statement in the Episode made by Smith or Pulum about any of the Plaintiffs, much less plead why those statements are capable of a defamatory meaning. *See Ferguson v. Watkins*, 448 So. 2d 271, 275 (Miss. 1984) ("The words employed must have been clearly directed towards the plaintiff."); *Chalk v. Bertholf*, 980 So. 2d 290, 298 (Ct. App. Miss. 2007) (affirming dismissal of complaint where it "failed to set forth the statements, paraphrased or verbatim, that constituted slander" and noting that the "failure to provide any substance regarding the allegedly slanderous words in the complaint . . . was fatal to the [plaintiff's] claim").

29. To the extent that Plaintiffs' claim for defamation against Defendants Smith and Pulum arises out of the inclusion of Plaintiff Cheryl McGee's photograph in the Episode, Plaintiffs do not allege that Defendants Smiths or Pulum had anything to do with the inclusion of such photograph. Plaintiffs do not allege that Defendants Smith or Pulum produced or distributed the Episode, supplied Jupiter with the photograph, or even commented on or referenced the photograph in the portion of his interview included in the Episode.

30. Accordingly, Plaintiffs fail to state a claim for defamation against Defendants Smith or Pulum as a matter of law because the FAC does not identify a false statement made by Smith or Pulum concerning any of the Plaintiffs.

B.  **Plaintiffs' Negligence Claim Against Fraudulently Joined Defendants Smith and Pulum Fails as a Matter of Law Because Plaintiffs Fail to Allege that those Defendants Owed any Duty or Obligation to Plaintiffs**

31. To plead a claim for negligence, Plaintiffs must allege "(1) a duty, or obligation, recognized by law, requiring the person to conform to a certain standard of conduct, for the protection of others against unreasonable risks; (2) a breach of the duty, a failure on the person's part to conform to the standard required; (3) a reasonably close causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interest of another." *Wells Fargo Fin. Leasing, Inc. v. Pope*, No. 2:15-CV-160-KS-MTP, 2017 WL 114408, at *4 (S.D. Miss. Jan. 11, 2017) (citing *Weathersby Cheverolet Co., Inc. v. Redd Pest Control Co., Inc.*, 778 So. 2d 130, 133 (Miss. 2001)). "Only when [the first two elements of the claim] are shown is it possible to proceed to a consideration of [the third element] since a duty and a breach of that duty are essential to a finding of negligence under the traditional and accepted formula." *Ward v. Hobart Mfg. Co.*, 450 F.2d 1176, 1181 (5th Cir. 1971). Here, Plaintiffs' claims fail as a matter of law against Defendants Smith and Pulum because Plaintiffs cannot plausibly allege the existence of any duty owed by Defendants Smith or Pulum to any of the Plaintiffs. *Id.*

32. A duty "may arise specifically by mandate of statute, generally by operation of law under the basic rule of common [law], or . . . out of a contractual relationship." *Doe v. Jackson Natl. Life Ins. Co.*, 944 F. Supp. 488, 491 (S.D. Miss. 1995). Under Mississippi law, a duty may also arise (i) from a confidential relationship between the parties in which "one party justifiably imposes special trust and confidence" in the other; (ii) when performing acts which may risk another's "life and limb;" or (iii) where there is a contractual relationship between the parties giving rise to a duty of good faith and fair dealing. *Id.* at 492–496. "A duty does not exist if the defendant could not reasonably foresee any injury as the result of his acts, or if his

conduct was reasonable in the light of what he could anticipate." *Karpovs v. State of Miss.*, 663 F.2d 640, 649 (5th Cir. 1981).

33.     The FAC contains only a single allegation directly related to Defendants Smith and Pulum:  Smith and Pulum, "*upon information and belief*, supplied both on-camera and off-camera information" to Jupiter.  *See* FAC ¶¶ 27(h)-(i) (emphasis added).  Based on that conclusory and unsupported allegation, Plaintiffs insist that "the Defendants" (including Smith and Pulum) had "one or more of the following duties":

- The duty to secure Plaintiff Cheryl D. McGee's permission before using her image;
- The duty to ensure the image of Cheryl D. McGee used in the program was, in fact, an image of the same "Cheryl McGee" involved with Ellis and Odom;
- The duty to produce, authenticate, comment and/or verify that the video was factually accurate, including the likeness and identity of all individuals;
- The duty to air programming and images where authority was legally obtained; and,
- Other duties as may be established by law.

*See* FAC ¶¶ 63(a)-(e).  Plaintiffs further allege that Smith and Pulum "owed the duty to utilize public service in an appropriate manner." *Id*. ¶ 66.  Plaintiffs fail to provide any legal or factual basis for these alleged duties — nor can they — because these alleged duties lack any foundation in statute or case law.  Plaintiffs do not assert any personal, professional, or plausible contractual relationship between the Plaintiffs and Smith or Pulum.  None exists.

34.     Even if Defendants Smith and Pulum had owed Plaintiffs a legally recognized duty in connection with their appearance in the Episode, there is no specific allegation that those

11

Defendants breached such a duty.  Smith and Pulum were independent third-parties who were interviewed for the Episode because they were direct participants in the Ellis murder trial and were not compensated for their participation.  *See* Exhibit B, Smith and Pulum Releases.  There is no allegation or evidence to establish that Smith or Pulum provided McGee's image to Jupiter or that they had any right to supervise or approve the content of the Episode produced by Jupiter.

35.     Plaintiff's failure to plausibly allege that Smith or Pulum owed any duty to Plaintiffs, or that they could have reasonably foreseen the allegedly mistaken use of Plaintiff McGee's image in the Episode and the supposed harm to Plaintiffs, is fatal to Plaintiffs' negligence claim against Defendants Smith and Pulum.

### C. Mississippi Law Does Not Recognize the Tort of Negligent Infliction of Emotional Distress Based On Defamatory Non-Commercial Speech

36.     Plaintiff's claim for negligent infliction of emotional distress ("NIED") fails as a matter of law against fraudulently joined Defendants Smith and Pulum because, as courts in the Fifth Circuit have repeatedly held, Mississippi law does not recognize NIED as a tort claim when based on allegedly defamatory non-commercial speech.  *Mitchell v. Random House, Inc.*, 865 F.2d 664, 672 (5th Cir. 1989) ("There is no Mississippi precedent to support [plaintiff's] claim for negligent infliction of emotional distress based upon a written noncommercial publication. *We will not create this tort for Mississippi*.") (emphasis added); *see also Hayne v. The Innocence Project*, No. 09-cv-218, 2011 WL 198128, at *11 (S.D. Miss. Jan. 20, 2011) ("Mississippi law does not recognize a cause of action for negligent infliction of emotional distress arising from a defamation claim."); *Pierce v. The Clarion Ledger*, 433 F. Supp. 2d 754, 760 (S.D. Miss. 2006) (". . . [N]o cause of action exists under Mississippi law for negligent infliction of emotional distress arising from non-commercial speech."); *c.f. Hudson v. Palmer*, 977 So. 2d 369, 384–85

12

(Ct. App. Miss. 2007) (noting that Mississippi courts have not recognized a claim for NIED, declining to recognize such a tort in the absence of a viable claim for defamation).

37. Here, Plaintiffs' claim against Smith and Pulum for NIED arises out of the same allegations as Plaintiffs' claim for defamation against Smith and Pulum, namely that the Episode allegedly included an image of Plaintiff Cheryl McGee without her authorization. *See* FAC ¶ 74. For that reason, the claim must fail.

**D. Plaintiffs Fail to State a Claim for Invasion of Privacy Against Smith and Pulum Because Smith and Pulum are Not Alleged to Have Made Any Statements About Plaintiffs**

38. Mississippi has recognized all four of the distinct sub-theories of invasion of privacy, including (1) intentional intrusion upon solitude and seclusion (2) misappropriation of another's identity; (3) the public disclosure of private facts; and (4) holding another to the public eye in a false light. *See, e.g.*, *Gales v. CBS Broadcasting, Inc.*, 269 F. Supp. 2d 772, 783–84 (S.D. Miss. 2003). The FAC contains no factual allegations to support any of these theories as against Defendants Smith and Pulum, and, instead, relies on only vague, "formulaic recitation of the elements of" the claim for invasion of privacy under Mississippi law. *See Ashcroft,* 556 U.S. at 678.

39. Plaintiffs' invasion of privacy claim fails as against Defendants Smith and Pulum because the FAC does not plausibly allege that they had any part in the alleged use of Plaintiff Cheryl McGee's image in the Episode. *See Gales*, 269 F. Supp. 2d at 783 (dismissing claims against individuals interviewed in television news broadcast, stating that "[i]n order to recover under a misappropriation of identity theory, the plaintiffs must, by definition, show that they were identified by the defendants [in the program at issue]. Similarly, in order to recover under a false light theory, they must show that the defendants' statements were 'clearly directed at them.'")

40.     The Court's decision in *Gales* is instructive here.  The plaintiffs in *Gales* sued two foreign television broadcast corporations over allegedly defamatory statements and invasion of privacy arising from defendants' news show, *60 Minutes. Id.* at 774-78.  The plaintiffs also joined two Mississippi residents as defendants, who had been interviewed for the episode in question, in an effort to destroy complete diversity among the parties. *Id.*  The media defendants removed and opposed plaintiffs' motion to remand on the grounds that the interviewees had been fraudulently joined. *Id.*  In analyzing the allegations against the interviewees, the Court stressed that "[it] must focus only on the four corners of what [the interviewees] actually said in the portions of their interviews aired on the program." *Id.* at 779.  The Court ultimately concluded that the plaintiffs could not reasonably state a claim for invasion of privacy against the interviewees because the plaintiffs had failed to allege any facts showing that the interviewees, as opposed to the other media defendants, had explicitly identified or directed their statements at the plaintiffs. *Id.* at 782–84.

41.     The mere fact that Defendants Smith and Pulum appeared in an interview in a segment of the Episode is not sufficient to sustain a claim for invasion of privacy against them. As in *Gales*, Plaintiffs' invasion of privacy claim against Defendants Smith and Pulum is defective because the FAC does not allege that they made any statements about Plaintiffs or facilitated the alleged use of Plaintiff Cheryl McGee's photograph.

### E.     Plaintiffs Fail to State a Claim for Breach of Contract Against Smith and Pulum Because Plaintiffs Do Not Plausibly Allege Plaintiffs are Intended Beneficiaries of the Release Agreements

42.     In order for a third-party to sue for breach of contract, the allegedly broken condition must have been "placed in the contract for his direct benefit" such that his rights "*spring from the terms of the contract itself*."  *Adams v. Greenpoint Credit, LLC*, 943 So. 2d 703, 709 (Miss. 2006) (emphasis in original); *Mississippi High Sch. Activities Ass'n, Inc. v. Farris By*

14

*& Through Farris*, 501 So. 2d 393, 396 (Miss. 1987).  Mississippi courts engage in a three-part analysis to determine "when a particular case comes within the rule:"

> (1) When the terms of the contract are expressly broad enough to include the third party either by name as one of a *specified class*, and (2) the said third party was *evidently* within the intent of the terms so used, the said third party will be within its benefits, if (3) the promisee had, in fact, a *substantial* and *articulate* interest in the welfare of the said third party in respect to the subject of the contract.

*Farris*, 501 So. 2d at 396 (emphasis added).  Accordingly, courts have reasoned that where the contract clearly states the parties to the contract, and there is no language identifying the plaintiff by name or member of a specified class, or language reflecting the intent of either party to the contract to include *plaintiff* as a beneficiary, then plaintiff is a mere incidental beneficiary. *Knight's Marine & Indus. Servs. Inc. v. Lee*, 110 So. 3d 795, 798 (Miss. Ct. App. 2012).

43. Here, Plaintiffs allege only that Defendants Smith and Pulum each signed a release with Defendant Jupiter, agreeing not to "violate or infringe upon the rights of any third party."  FAC ¶¶ 69-70.  Plaintiffs allegations are insufficient to show that they are intended beneficiaries because Plaintiffs do not allege that they were identified by "name or [as a] member of a specified class" or that the language of the release reflects Defendant Smith, Pulum, or Jupiter's intent to include *Plaintiffs* as beneficiaries—nor is such a reading supported by the plain language of the releases.  *See, e.g.*, *Knight's Marine & Indus. Servs. Inc., supra*; exhibit B, Smith and Pulum Releases.  Thus, Plaintiffs claim for breach of contract against Smith and Pulum fails as a matter of law because Plaintiffs do not plausibly allege that Plaintiffs were intended beneficiaries to the releases.

15

### F. Plaintiffs' Claim for Misuse of Public Office/Employment By Fraudulently Named Defendants Smith and Pulum is Deficient as a Matter of Law

44. Plaintiffs' claim for misuse of public office is based on two Mississippi constitutional provisions—Article 4, Section 96 ("Section 96") and Article 6, Section 174 ("Section 174'). FAC ¶¶ 85-86; Miss. Const., § 96, 174. Plaintiffs allege that Smith and Pulum violated those provisions and misused "public office, employment or service" by accepting a pecuniary benefit in return for the interviews they granted to the producers of the Episode. FAC ¶¶ 86-89, 92. Plaintiffs point to the language of the releases signed by Defendants Smith and Pulum (reciting "good and valuable consideration" received) as evidence of the pecuniary benefit derived by those defendants. FAC ¶ 90.

45. Neither Section 96 nor Section 174 provides a basis for a claim against Smith or Pulum here because (i) neither of those provisions prohibit the receipt by a public officer of a payment from third parties in connection with an interview or otherwise, (ii) Plaintiffs did not, and cannot, allege that Defendants Smith and Pulum received a payment or any pecuniary benefit, and (iii) Plaintiffs do not have standing to bring such a claim.

46. First, the FAC incorrectly alleges that Section 96 "specifically prohibits any public officer or servant from receiving compensation unless duly authorized by law." FAC ¶ 85. Section 96 actually states that "[t]he *Legislature* shall never grant extra compensation. . . to any public officer. . . after service rendered or contract made, nor authorize payment, or part payment, of any claim under any contract not authorized by law." Miss. Const., § 96 (emphasis added). Thus, Section 96, by its express terms, pertains only to acts by the *Legislature*.

47. Similarly, Section 174 does not prohibit Smith or Pulum from "deriving any pecuniary benefit" in connection with interviews given to producers of a documentary series.

Section 174 simply authorizes the legislature to proscribe the district attorney's duties and compensation from the State of Mississippi:

> A district attorney for each circuit court district shall be selected in the manner provided by law, whose term of office shall be four years, whose duties shall be prescribed by law, and whose compensation shall be a fixed salary.

*See Williams v. State,* 184 So. 3d 908, 912 (Miss. 2014); *Kennington-Saenger Theatres v. State ex rel. Dist. Atty.*, 196 Miss. 841, 18 So. 2d 483, 488 (1944) (Section authorizes legislature to proscribe district attorney's duties and primarily concerned with district attorney's jurisdictional power).

48. Thus, neither Section 96 or 174 proscribes or relates in any way to the circumstances alleged here: participation "for good and valuable consideration" by a district attorney or a police detective in interviews given by those individuals for use in a documentary series. FAC ¶¶ 88-89, 92.

49. Second, the FAC does not allege that either Smith or Pulum actually received any "pecuniary" benefit (*i.e.*, money or any other financial gain) in connection with the interviews. The FAC alleges only that the releases signed by Smith and Pulum included a boilerplate recitation confirming receipt of the "consideration" necessary to forming a contract: "[Defendants Smith and Pulum] acknowledge each received 'good and valuable consideration' for involvement in the video." FAC ¶¶ 31, 36, 90; exhibit B, Smith and Pulum Releases. The releases signed by Smith and Pulum also disclaim any "payments whatsoever in connection with the Photography." Thus, even assuming that the statutes referenced in the FAC applied to the allegations in this action (which they do not), the FAC fails to allege that either Smith or Pulum received any additional compensation as a result of the interviews.

50. Finally, Plaintiffs do not have standing to sue Smith or Pulum under Section 96 or 174 because they lack colorable interest in the alleged statutory violations. *See Burgess v. City of Gulfport*, 814 So.2d 149, 152-53 (Miss. 2002); *see also Davis v. City of Jackson*, 240 So.2d 381, 384 (Miss. 2018) (affirming lack of standing to sue where plaintiffs rights were not "affected by the sections of the ordinance complained of"). As noted, Section 96 and Section 174 simply set procedures by which public officials are paid. Even accepting the allegations in the FAC as true, Plaintiffs were in no way affected by a statute prohibiting the Legislature from granting extra compensation to public officials (Section 96) or a statute authorizing the creation of district attorneys' offices in each circuit court district in Mississippi (Section 174).

51. Plaintiff's failure to plausibly allege—in either fact or law—that Smith or Pulum violated Section 96 or Section 174, or that Plaintiffs were affected by either statute, is fatal to Plaintiffs' claim against those Defendants.

## IV. PROCEDURAL ALLEGATIONS

52. The Southern District of Mississippi, Northern Division, is the federal district and division that encompasses the First Judicial District of Hinds County, Mississippi. *See* 28 U.S.C. § 104(b)(1).

53. Jupiter was served with the First Amended Complaint on July 13, 2020. *See* Exhibit A, State Court Docket at Dkt. No. 10. This Notice of Removal therefore is timely filed within thirty days of that service, as required under 28 U.S.C. 1446(b)(1).

54. Jupiter is the only Defendant properly joined and served in the action.

55. Out of an abundance of caution, CNN, Inc., which operates HLN (which is not an entity capable of being sued in its own name) appears specially for the sole purpose of consenting to the removal of this action, despite being improperly served, and does not waive

any of its defenses under Fed. R. Civ. P. 12(b), including its objections to improper service and to personal jurisdiction. *See* Exhibit C, Consent to Removal.

56. Defendant Jupiter has simultaneously given prompt written notice of the filing of its Notice of Removal to Plaintiffs and filed a copy of the Notice of Removal within the Circuit Court of the First Judicial District of Hinds County, Mississippi, attached hereto and incorporated by reference as Exhibit D. *See* 28 U.S.C. § 1446(d).

## V. CONCLUSION

Based on the foregoing, Defendant Jupiter respectfully requests that this action be removed from the Circuit Court for the First Judicial District of Hinds County, Mississippi, to the United States District Court for the Southern District of Mississippi, Northern Division.

RESPECTFULLY SUBMITTED, this 12th day of August, 2020.

> By: *Haley F. Gregory*
> Donna Brown Jacobs, MSB No. 8371
> Haley F. Gregory, MSB No. 104532
> *Attorneys for Defendant Jupiter*
> *Entertainment Holdings LLC*

BUTLER SNOW LLP
1020 Highland Colony Pkwy, Ste 1400
P.O. Box 6010
Ridgeland, MS 39158
T: (601) 948-5711
F: (601) 985-4500
E: donna.jacobs@butlersnow.com
   haley.gregory@butlersnow.com

## CERTIFICATE OF SERVICE

I, Haley F. Gregory, do hereby certify that I have this date served a copy of the foregoing upon the following counsel of record in this case via regular U.S. Mail and electronic mail:

>Anthony R. Simon
>Pieter Teeuwissen
>SIMON & TEEUWISSEN, PLLC
>621 East Northside Drive
>Jackson, MS 39206
>*Attorneys for Plaintiffs*

I further certify that I caused a true and correct copy of the foregoing instrument to be served via U.S. Mail, postage prepaid on the following:

>Honorable Winston L. Kidd
>Circuit Court Judge of Hinds County, Mississippi
>P.O. Box 22711
>Jackson, MS 39225-2711

This 12th day of August, 2020.

>*/s/ Haley F. Gregory*
>Haley F. Gregory

54184237.v1